**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RANDEN KIECK,

*Plaintiff*,

v.

PORT AUTHORITY TRANS HUDSON CORP.,

*Defendant*.

Civil Action No. 24-6711

**OPINION**

November 17, 2026

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Port Authority Trans Hudson Corporation's ("Defendant" or "PATH") Motion for Summary Judgment. (ECF 32, "Mot.") Plaintiff Randen Kieck ("Plaintiff" or "Kieck") opposed the Motion. (ECF 36, "Opp.") Defendant filed a reply. (ECF 37, "Reply.") The Court has decided the Motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

As of April 2026, Plaintiff Randen Kieck has been employed by Defendant PATH for around twelve years. (Def. SUMF ¶ 1.) Plaintiff began his employment at PATH in the role of a

[1] The facts and procedural history are drawn from the Complaint, (ECF 1, "Compl."), Defendant's Motion for Summary Judgment, (Mot.), Plaintiff's Opposition, (Opp.), both parties' submissions regarding undisputed material facts, (ECF 32-12, "Def. SUMF"; ECF 36-1, "Pl. Counter-SUMF"; ECF 37-6, "Def. Res. SUMF"), and documents integral to or relied upon by the Complaint. *See*

Trackman, and then worked as a Structural Maintainer and a Pump Maintainer before becoming a Station Maintainer. (Pl. Counter-SUMF ¶ 56.) On September 3, 2021, Plaintiff was working in his role as a Station Maintainer when he and other employees were designated the task of cutting and clearing branches from trees hanging over their regular work location, Consolidated ("C") Yard. (Def. SUMF ¶¶ 3-6; *see* Compl. ¶ 2.) Plaintiff's "work crew" for this task consisted of himself, Luca DiTommaso ("DiTommaso"), Mike Cunnigham ("Cunningham"), and Todd Hennessey "Hennessey"). (Def. SUMF ¶ 4.) DiTommaso had experience using a chainsaw, so he was delegated the task of cutting branches hanging over a fence using the saw, while Plaintiff, Cunningham, and Hennessey were tasked with picking up and loading the branches into a truck for disposal. (*Id.* ¶¶ 6-7, 11, 13.) DiTommaso had also completed branch-cutting work in the past. (*Id.* ¶ 8.)

Prior to starting work, Hennessey conducted a safety briefing. (*Id.* ¶ 5.) In his deposition, Plaintiff testified that he had no safety concerns about picking up branches or loading them into the truck. (*Id.* ¶¶ 14-15.) He had prior experience picking up garbage and other items in the same work area. (*Id.* ¶ 17.) In addition to receiving Hennessey's safety briefing with respect to the relevant task, Plaintiff also received general safety training as part of his employment with Defendant. (*Id.* ¶ 19.) For example, Plaintiff was trained to recognize and avoid trip-and-fall hazards in the workplace. (*Id.* ¶ 20.) Plaintiff stated he was familiar with the PATH Book of

---

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). In evaluating Defendant's Motion, "[t]he Court will consider those facts which are undisputed as set forth in" Defendant's Statement of Undisputed Material Facts, (Def. SUMF), Plaintiff's Counterstatement of Material Facts (Pl. Counter-SUMF), and Defendant's Response to Plaintiff's Counter-Statement of Undisputed Material Facts, (Def. Res. SUMF). *See Melendez v. Target Corp.*, No. 18-9405, 2022 WL 1617709, at *1 n.2 (D.N.J. May 23, 2022) (citing L. Civ. R. 56.1(a) and *Liberty Bell Bank v. Rogers*, 726 F. App'x 147, 150-51 (3d Cir. 2018)).

Rules, which contained safety standards, and he was required to attend workplace safety refresher courses once per year. (*Id.* ¶ 22.) In these refresher courses, Plaintiff was further trained on how to identify trip-and-fall hazards. (*Id.* ¶ 23.) For example, Plaintiff was instructed to inspect his work area for trip-and-fall hazards before beginning any assignment. (*Id.* ¶ 24.)

The relevant incident and injury occurred when Plaintiff attempted to throw a single branch into the back of the truck. (*Id.* ¶ 32.) As Plaintiff attempted to throw the branch, a vine of ivy became wrapped around his leg, causing him to fall forward into the truck, landing on his elbow on the tailgate. (*Id.* ¶¶ 32-33, 46.) DiTommaso did not witness the incident and has no knowledge of how it occurred, as he was operating the chainsaw from an elevated lift basket. (*Id.* ¶¶ 10, 38.) Further, at the time Plaintiff was injured, neither, Tim Ryan, the Foreman, nor Hennessey, the next most senior person on the job, were on site. (Pl. Counter-SUMF ¶¶ 88-89.)

Plaintiff filled out PATH's Employee Occupational Injury or Illness Report on the date of the incident. (Def. SUMF ¶ 42.) In the report, Plaintiff confirmed that he inspected the worksite prior to beginning work. (*Id.* ¶ 44.) Plaintiff also confirmed that he was not aware of any unsafe conditions prior to beginning work, a fact that he confirmed again during his deposition on September 7, 2021. (*Id.* ¶ 45.) When asked what he could have done to prevent the injury he received, he wrote, "nothing, it's an accident." (*Id.* ¶ 47.) In addition to the report, Plaintiff testified that nothing about loading the truck or picking the branches had concerned him, and that he had no safety concerns about picking up branches before the incident occurred. (*Id.* ¶¶ 14-15.) When asked whether picking up branches was a task that required training, Plaintiff responded that he "had no idea," and that he "was just throwing the debris into the truck." (*Id.* ¶ 26.) When asked to describe his technique for picking up the branch, Plaintiff responded: "Technique? How

do you pick something up—you just pick it up." (*Id.* ¶ 28.) DiTommaso also testified that picking up branches does not require specialized training. (*Id.* ¶¶ 30-31.)

Plaintiff filed suit against Defendant on June 6, 2024. (Compl.) Defendant answered Plaintiff's Complaint on June 26, 2024. (ECF 7.) After nearly two years of discovery, Defendant filed the present Motion for Summary Judgment on April 22, 2026. (Mot.) Plaintiff opposed on June 2, 2026. (Opp.) Defendant filed a reply on June 12, 2026. (Reply.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be

discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

Once the movant has met their threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). But if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

**B. FELA**

The Federal Employers Liability Act, or "FELA," "provides a cause of action against a common carrier railroad whose negligence 'in whole or in part' causes an injury to its employees." *Roberts v. N.J. Transit Rail Ops., Inc.*, No. 24-6669, 2026 WL 1097141, at *3 (D.N.J. Apr. 23, 2026) (citing *Moncrease v. N.J. Transit Rail Ops., Inc.*, 175 F. Supp. 3d 405, 408 (D.N.J. 2016)).

In the Third Circuit, plaintiffs must prove four elements to establish a FELA claim: that "(1) 'the defendant is a common carrier by railroad engaged in interstate commerce'; (2) 'the plaintiff was employed by the defendant and assigned to perform duties which furthered such commerce'; (3) 'the plaintiff's injuries were sustained while they were employed by the common carrier'; and (4) 'the plaintiff's injuries resulted from the defendant's negligence.'" *Milan v. N.J. Transit Rail Ops., Inc.*, No. 18-13735, 2025 WL 842313, at *3 (D.N.J. Mar. 18, 2025) (quoting *Felton v. Se. Pa. Transp. Auth.*, 952 F.2d 59, 62 (3d Cir. 1991)).

Here, the parties only dispute whether Plaintiff's injuries resulted from Defendant's negligence. To establish a prima facie case of a FELA claim, "a plaintiff must demonstrate the traditional elements of a common law negligence claim: 'duty, breach, foreseeability, and causation.'" *Roberts*, 2026 WL 1097141, at *3 (quoting *Tramontano v. N.J. Transit Rail Ops., Inc.*, No. 14-5706, 2023 WL 3248238, at *19 (D.N.J. May 4, 2023)). Under FELA, an employer-railroad's duty of care "is to provide its employee with a reasonably safe work environment under the circumstances." *Milan*, 2025 WL 842313, at *3. "[A] railroad breaches its duty when it knew or by the exercise of due care, should have known that its operations were inadequate to protect its employees." *Id.* (quoting *Bruce v. Norfolk S. Ry. Co.*, No. 19-476, 2022 WL 510552, at *3 (W.D. Pa. Jan. 3, 2022)). "In other words, if the railroad could not reasonably foresee a particular condition 'would or might result in a mishap and injury, then the [railroad] is not required to do anything to correct [the] condition.'" *Roberts*, 2026 WL 1097141, at *4 (quoting *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011)). And "[t]o establish reasonable foreseeability, a

plaintiff must show the railroad possessed either actual or constructive notice of the alleged dangerous condition that caused injury to the plaintiff." *Id.*

Finally, under FELA, the element of causation applies a relaxed standard. *See id.*; *see also Gomez v. H&M Int'l Transp., Inc.*, No. 17-231, 2021 WL 236596, at *3 (D.N.J. Jan. 25, 2021) ("FELA is . . . a 'negligence statute with an explicitly-stated relaxed standard of causation.'") quoting *Monheim v. Union R.R. Co.*, 996 F. Supp. 2d 354, 361 (W.D. Pa. 2014))). Importantly, "FELA does not require the employer's railroad negligence to have been the sole cause of the employee's injury." *Tramontano*, 2023 WL 3248238, at *19. "[C]ausation is established if the railroad's negligence 'played any part, however small, in the injury.'" *Roberts*, 2026 WL 1097141, at * 4 (quoting *McBride*, 564 U.S. at 694). As a result, "a negligent railroad 'can only evade liability if [the] [p]laintiff was the *sole* cause of his injury.'" *Id.* (quoting *Milan*, 2025 WL 842313, at *5) (emphasis in original). This means that, "[a]t the summary judgment stage, the court is justified in withdrawing a FELA claim from the jury's consideration only if 'there is zero probability either of [the railroad's] negligence or that any such negligence contributed to the injury of the employee.'" *Id.* at *5 (quoting *Milan*, 2025 WL 842313, at *5).

## III. ANALYSIS

Defendant argues that Plaintiff has not established a *prima facie* case under FELA because PATH did not owe Plaintiff a duty to train him on how to pick up branches, and that even if PATH owed Plaintiff a duty, PATH did not breach it. (Mot. at 5-13.) Defendant specifically asserts that its duty "is measured by what is reasonably foreseeable under the circumstances," and that it was not reasonably foreseeable that assigning Plaintiff to pick up branches would result in injury. (*Id.* at 9.) In response, Plaintiff argues that Defendant had actual notice of the fact that the assigned task of picking up branches during tree removal was dangerous, and that Defendant breached its

duty of care by, among other things, failing to provide tree removal training, an order of operations in completing the task, tools to "manage the vine hazard at ground level," and adequate supervision. (Opp. at 8-12.)

**A. Duty**

"A railroad's 'duties are measured by what is reasonably foreseeable under like circumstances—by what in light of the facts then known, should or could reasonably have been anticipated.'" *Maxwell v. Port Auth. Trans Hudson Corp.*, No. 21-1040, 2024 WL 3064691, at *4 (D.N.J. Jun. 20, 2024) (quoting *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 118 (1963)). As noted, to establish reasonable foreseeability, a plaintiff must show that the railroad defendant had actual or constructive notice of the alleged dangerous condition that caused the plaintiff's injury. *Roberts*, 2026 WL 1097141, at *4. Defendant argues that it did not have actual nor constructive notice of a dangerous condition. (Reply at 10.) On the other hand, Plaintiff argues that Defendant did in fact have actual notice and constructive notice of the dangerous conditions created by the tree removal task, and points to the fact that he and his crew questioned the safety of the task during the briefing provided to them by Hennessy, and that Defendant typically hired an outside arborist for tree removal work. (Opp. at 8-10.)

Here, Plaintiff has set forth sufficient facts to create a genuine dispute of material fact as to whether Defendant had actual notice of the dangerous conditions posed by the tree-cutting and branch-removal task. An employer has actual notice if they "either created the condition or received reports of it such that the employer is actually aware of the existence of the particular condition." *Roberts*, 2026 WL 1097141, at *4 (internal quotations and citations omitted). Specifically, in his deposition, Plaintiff testified that after receiving the safety briefing, he and his work crew "actually questioned the matter because that's not our job." (ECF 32-2, "Kieck

Deposition" or "Kieck Dep." at T36:13-14.) Plaintiff also confirmed that he understood a "good faith challenge" to be a challenge of "unsafe work," and stated that he and his crew "did challenge" the assignment. (*Id.* at T36:20-37:9.) Plaintiff noted that they specifically "questioned the foreman, and the foreman called the supervisor and the supervisor told us to go do the work." (*Id.* at T37:6-9.) When describing why he was concerned about performing the task, Plaintiff repeated the statement that "it's not our job," and said he had "never cut down a tree before." (*Id.* at T37:12-18.)[2] While Defendant argues that Plaintiff's statement about the task not being part of his "job" is not notice of a dangerous condition, whether Plaintiff's testimony indicated that he was only concerned about his qualifications, not the safety of the task, "is a factual issue better resolved by a jury." *See Tramontano*, 2023 WL 3248238, at *21 (concluding that the question of whether a plaintiff's testimony indicated he was concerned about overcrowding or the potential for dangerous violence on a train platform was better resolved by a jury).

"A FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion." *Id.* at *19. Here, Plaintiff has presented enough evidence to create a genuine dispute as to whether Defendant had actual notice of the dangerous conditions associated with Plaintiff's assigned task. As such, the Court cannot at this time conclude that there is zero probability of Defendant's negligence. *See Roberts*, 2026 WL 1097141, at *5; *see also*

---

[2] Plaintiff reiterated some of these statements in a declaration he submitted with his Opposition brief. (*See* ECF 36-2, "Kieck Decl.") For example, in his declaration, Plaintiff states that he and his crew members "questioned/challenged the assignment" from their foreman because they "had never done that kind of work before." (*Id.* ¶ 15; Pl. Counter-SUMF ¶ 67.) Defendant asks this Court to reject Plaintiff's declaration as a "sham affidavit," alleging that it conflicts with his sworn deposition testimony. (Reply at 12.) "Under the 'sham affidavit' doctrine, a court may disregard an affidavit that contradicts a prior deposition." *Milan*, 2025 WL 842313, at *4 (citing *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007)). However, since the Court does not rely on Plaintiff's declaration in reaching its conclusion here, it need not address the issue of whether it is a sham affidavit at this time. *See Capozzoli v. Cumulus Media Holdings, Inc.*, No. 20-4992, 2022 WL 909659, at *9 n.11 (D.N.J. Mar. 29, 2022).

*Tramontano*, 2023 WL 3248238, at *21 (declining to grant summary judgment in a defendant's favor where there was a genuine dispute of material fact over whether the defendant had actual or constructive notice of a hazard). The Court therefore cannot grant summary judgment in Defendant's favor.[3]

**B. Breach**

Defendant argues that if the Court deems it to have owed Plaintiff a duty, it did not breach that duty. (Mot.) Relatedly, Defendant also argues that Plaintiff cannot prove breach because expert testimony is required to establish that the tree removal work should have been performed by a professional arborist, that the order of operations should have been different, or that the way he and his work crew performed the work was unsafe. (Reply at 8-9.) Plaintiff argues that Defendant breached its duty by failing to provide training on the tree removal task, an order of operations in completing the task, tools to manage the vines at the ground level, adequate

[3] An employer has constructive notice if "the condition is visible and apparent and has existed for a sufficient length of time prior to the accident to permit the employer to discover and remedy it." *Roberts*, 2026 WL 1097141, at *4 (internal quotations and citations omitted). "The 'mere [e]xistence of an alleged dangerous condition is not constructive notice of it." *Wisowaty v. Port Auth. Trans-Hudson Corp.*, No. 11-2722, 2012 WL 5555337, at *3 (D.N.J. Nov. 9, 2012) (quoting *Jensen v. Hilton Newark Airport,* No. 09-1290, 2011 WL 1792374, at *5 (D.N.J. May 10, 2011)). "Rather, there must be some basis for concluding that the defendant 'should have known' about the defect." *Tramontano*, 2023 WL 3248238, at *21 (quoting *Wagner v. CSX Transp., Inc.*, No. 20-1314, 2023 WL 34803, at *4 (W.D.N.Y. Jan. 4, 2023)). Defendant argues it lacked constructive notice because the hazardous branch with vines did not exist for long enough to be discovered since it was only cut moments before Plaintiff fell. (*See* Reply.) Plaintiff argues that Defendant had constructive notice that the assigned task itself posed dangerous conditions for Station Maintainers, Masons, and Painters like Plaintiff and his work crew, since it maintained a contract with an arborist company, Asplundh, for general tree-removal work. (Opp. at 10.) However, Plaintiff provides no evidence suggesting that Defendant maintained a contract with Asplundh because it was aware that it was dangerous to have Station Maintainers, Masons, and Painters perform tree removal work or branch-cutting work. Given that there is no evidence in the current record that Defendant was aware of the dangerous conditions for a sufficient length of time before it was performed, the Court agrees that Defendant lacked constructive notice. However, this conclusion does not change the Court's ultimate decision to deny Defendant's Motion for Summary Judgment at this time.

supervision, and by failing to have Asplundh, the arborist company, perform the task. (Opp. at 11-12.)

The Court first addresses Defendant's expert witness argument. "Under Federal Rule of Evidence 702, expert testimony is permitted when 'specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Infermo v. N.J. Transit Rail Ops., Inc.*, No. 10-2498, 2012 WL 209359, at *7 (D.N.J. Jan. 24, 2012) (citing Fed. R. Evid. 702). While a jury could benefit from expert assistance in this case, the Court concludes that a juror would be capable of assessing the evidence of Plaintiff's training, lack of experience performing tree removal work, and ways in which the vines and branches were cut to determine whether the task posed safety concerns. *See id.* (concluding that a juror could assess, without expert assistance, whether the condition of a walking path was hazardous by evaluating evidence of the uneven nature of the ground and the grading of the right of way). As such, Plaintiff's lack of an expert witness does not prevent him from asserting that Defendant breached its duty of care.

Further, as previously noted, "a railroad breaches its duty when it knew or by the exercise of due care, should have known that its operations were inadequate to protect its employees." *Milan*, 2025 WL 842313, at *3. "[I]f the railroad could not reasonably foresee a particular condition 'would or might result in a mishap and injury, then the [railroad] is not required to do anything to correct [the] condition.'" *Roberts*, 2026 WL 1097141, at *4. Here, however, Plaintiff has set forth sufficient facts to create a genuine dispute as to whether Defendant could foresee or had actual notice of the fact that the tree removal work was a danger to Plaintiff's safety. (*See supra* Part III(A).) Plaintiff has also set forth sufficient facts to create a genuine dispute as to whether he and his work crew were sufficiently trained by Defendant in tree cutting and removal. On the one hand, Defendant argues that Plaintiff is unable to identify a "specific deficiency in any

training provided by PATH." (Mot. at 11.) On the other hand, Plaintiff asserts that he and his work crew did not receive any training on "any aspect of the tree removal operation." (Opp. at 10.) Plaintiff references DiTommaso's deposition testimony, where he stated that he had never received any training from Defendant on how to cut branches from trees, nor any training on how to use the chainsaw. (ECF 32-3, "DiTommaso Deposition" or "DiTommaso Dep." at T14:16-18, 15:14-17.) These statements dispute Defendant's assertion that Plaintiff could not identify any deficiencies in the training provided to him and his work crew. (*See* Opp. at 10.) In his own deposition, Plaintiff also stated that he did not know if he needed to be trained on picking up branches and loading them into the truck, (Kieck Dep. at T39:17-23), or if there was any type of training that could have prevented the incident, (*id.* at T41:16-21). These statements dispute Defendant's implication that there were no deficiencies in the training it provided. The fact that there exists a genuine dispute as to whether Defendant satisfied its duty of care further exemplifies that the Court cannot grant summary judgment in Defendant's favor at this time.

**C. Causation**

"[C]ausation is established if the railroad's negligence 'played any part, however small, in the injury.'" *Roberts*, 2026 WL1097141, at * 4. As a result, "a negligent railroad 'can only evade liability if [the] [p]laintiff was the *sole* cause of his injury.'" *Id.* As discussed throughout this Opinion, Plaintiff has set forth sufficient facts to create a genuine dispute as to whether Defendant had actual notice that the tree removal work posted a danger to his safety and whether Defendant adequately trained Plaintiff and his work crew on the task. "The Court cannot say that this is one of those extremely rare instances where there is zero probability either of employer negligence or that any such negligence contributed to" Plaintiff's injury. *Tramontano*, 2023 WL 3248238, at

*23. "Rather, the Court finds that Plaintiff[] has set forth sufficient facts to create a genuine dispute as to whether Defendant's negligence played any part in producing [his] injuries." *Id.*

## IV. CONCLUSION

Here, Plaintiff has set forth sufficient facts that create a genuine dispute of material fact as to whether Defendant had actual notice that the tree removal work posed a danger to his and his crew's safety, whether Defendant satisfied its duty of care, and whether Defendant played any part in producing his injuries. As such, for the reasons stated herein, Defendant's Motion for Summary Judgment is **DENIED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig: Clerk
cc: Jessica S. Allen, U.S.M.J.
Parties